## HOMER GAINES

### V.

## JOHN BECKER.

1. CHATTEL MORTGAGE—TAKING POSSESSION UNDER.—Such acts in taking possession of personal property under a chattel mortgage, as will, under a writ of attachment or execution, make a valid levy, will be a sufficient seizure under the mortgage.

2. LEVY—MANUAL CAPTION.—It is not necessary, to constitute a valid levy, that the officer should remove the property or touch it. It is enough that having the property in view and where he can control it, he does assume dominion over it, with the expressed purpose of holding under the writ.

3. ATTORNEY NOT LIABLE FOR ACTS OF CUSTODIAN.—Where an attorney, being directed by a mortgagee to take possession of property under a chattel mortgage, goes with an officer to the stable where the property is, and the officer takes possession of it, and the stable is then leased from the mortgagor, and a custodian selected by the mortgagee is placed in charge of the property, the attorney has done all that is necessary to constitute a sufficient taking possession of the property, and he is not liable for the subsequent neglect of the custodian in permitting the property to be seized under an execution.

APPEAL from the Circuit Court of Knox county; the Hon. JOHN J. GLENN, Judge, presiding. Opinion filed December 4, 1880.

The appellee filed his declaration in case in the Knox Circuit Court against the appellant, averring, in substance, that he held a chattel mortgage given by one John Burkhart to him upon certain horses and harnesses, particularly described in the declaration, to secure a note of $1,485.20, dated January 1, 1877, and due in thirteen months after date, with 10 per cent. interest; that said note and mortgage were placed in the hands of appellant, as an attorney-at-law, to be foreclosed for the benefit of appellee, but the appellant utterly failed to take possession of the mortgaged property, but left the same in the possession of the morgagor; in consequence thereof, the said chattels were seized upon execution in favor of one M. M. Ford, and sold at sheriff's sale, whereby the same were lost to the appellee.

The general issue being filed, a trial was had at the circuit, and a verdict and judgment against the appellant for $270.

From this judgment an appeal is prosecuted to this court.

Mr. L. DOUGLASS and Mr. G. A. LAWRENCE, for appellant; that there was a sufficient taking possession, cited Freeman on Executions, § 260; Denny v. Warren, 16 Mass. 420; Shepard v. Butterfield, 4 Cush. 425; Sanderson v. Edwards, 16 Pick. 146.

Messrs. McKENZIE & CALKINS, for appellee; that leaving the property in the possession of the mortgagor after expiration of the lien, is fraudulent *per se;* cited Hanford v. Obrecht, 49 Ill. 146; Wylder v. Crane, 53 Ill. 490; Reed v. Eames, 19 Ill. 594; Funk v. Staats, 24 Ill. 644.

PILLSBURY, J.   The principal contest in this case before the jury was, whether the appellant had, under all the circumstances of the case, taken such a possession of the property under the mortgage as to render him blameless for the subsequent loss of the chattels by the sale under the Ford execution. It appears, from the evidence in the record, that on the 27th day of January the appellant put the mortgage into the hands of one Mosher, a constable, and then they went to the residence of Burkhart and requested him to turn out the property upon the mortgage.   Burkhart went to the stable where the property was and pointed it out, and they examined the same, and the officer thinks he put his hands upon the horses as they stood in the stalls.   He also says he took down the harnesses mortgaged and examined them.   It also sufficiently appears that Burkhart turned the property over to Mosher, at least so far as he could do so by words.   This being done, the appellant leased the stable in which the horses were, to keep the property therein until the day of sale.   One Nelson was then called, and Mosher and appellant asked him to take charge of the property, which he agreed to do.   At this time they were all in the stable in full view of the property.   The appellant told Nelson that he must not permit Burkhart to use the horses unless he, Nelson, was with him.

Gaines v. Becker.

The constable and appellant both testify that they turned the property over to Nelson, but it is apparent that such "turn ing over" to him was by words only, none of the property being taken from the stable. There were, however, no other horses in the stable at the time it was rented by Gaines. The constable states that he and Gaines then left the stable, leaving Nelson there. Notices of the sale under the mortgage were written by appellant and signed and posted by Mosher. It further appears that Nelson neglected to do as he had agreed in regard to the property, but permitted Burkhart to attend to it, and when the execution was levied it was found in Burkhart's possession.

It is claimed by appellee that the property was not taken possession of by appellant under the mortgage in such a manner as to render the foreclosure effective against execution creditors of Burkhart.

As, in our opinion, for the reasons to be stated hereafter, the liability of appellant in this action depends upon the fact whether at the time it is claimed he took the property and turned it over to Nelson, he did all that was necessary to make a valid seizure of the mortgaged property, we have at some length set forth the acts done by him and Mosher under and by virtue of the mortgage.

It is apprehended that such acts in taking possession of personal property under a writ of attachment or execution, which would make a levy valid as against subsequent purchasers or attaching creditors, would likewise be a sufficient seizure under a chattel mortgage to prevent such mortgaged property from being taken in execution for the debts of the mortgagor.

There can be no doubt that where the levy is sought to be sustained as against third parties acquiring an interest in the property, the levy must be proven with greater strictness than when the rights of the defendant only are involved, and that in the former case a mere "pen and ink" levy will not avail. In such case the officer must go where the property is, assert his right under the writ, and have the property in his view and under his control. He must exercise, or assume to exercise, exclusive control over the property by virtue of his writ. He

must do some act which would make him liable in trespass were it not for the protection of his writ. Freeman on Executions, § 260.

But it is not essential to a valid levy that he should remove the property or touch it. It is enough that having the property in his view and where he can control it, he does assume dominion over it with the expressed purpose of holding under the writ; thereby depriving the defendant of his apparent control over the property. Such acts as would make him a trespasser in the absence of his writ.

And this control thus acquired is essential to be maintained: he must retain this power over the goods either by himself or by a custodian appointed for such purpose, especially in cases of attachment, and we think in cases of the foreclosure of chattel mortages.

"An actual seizure or manual caption is not essential, but the acts of the officer must be open and unequivocal, without concealing the transaction." "An actual taking of the property does not imply an actual touching of the property, but merely such a course of proceeding as is calculated to reduce it to the dominion of the law; and an assertion by the officer that he levies or takes the property by virtue of a writ in his possession, if the property is within his view, or where he can, if necessary, take it into his custody, is an actual taking possession of the property, or if he exercises that dominion over the property which owners ordinarily do." Herman on Executions, § 161. Says Walker, J., in Havely v. Lowry, 30 Ill. 45, "To render a levy on personal property complete, the officer must perform some act, which not only indicates an intention to seize the property, but he must reduce it to possession, or at least bring it within his immediate control. He must do some act which, if not protected by his writ, would render him a trespasser. If a delivery bond be not executed, he must, to affect the rights of third persons, take the property into his possession, so as to notify the world that a levy has been made." It will be noticed, however, that this decision does not state what particular acts are necessary to be done in order to take such possession. In Hollister v. Goodale, 8 Conn. 332,

it is said that to complete a valid levy of an attachment upon personal property, an actual *touching* of the property by the officer was essential.  " But," says Mr. Freeman, in his work on Executions, " this case is in opposition to a strong and decisive current of authorities."  We conclude from an examination of the authorities that it is not essential to an actual taking possession of property under a levy, or in forclosing a chattel mortgage, that the party asserting the right to the possession should actually *touch* it, or any part of it, but if he have the property in his view and under his control, and does, by exercising control over it by virtue of his process, indicate an intention of depriving the defendant of his apparent ownership and possession, it is sufficient if such power over it be continued by himself or custodians to protect the property from the claims of third parties.

Tested by this rule, the facts in this case, in our opinion, show that the appellant and Mosher took such actual possession of the mortgaged property as answered every requirement of the law.  They went with the mortgage to the residence of the mortgagor, and he, at their request, pointed out the property, the horses in the stable, and the harnesses in their accustomed place when not in use.  The officer took down the harnesses, and examined them, professing to act under the powers contained in the mortgage, and examined the horses, and thinks he placed his hand upon them during such examination.  The appellant then leased the stable in which the property was, until the day of sale, and calling Nelson, requested him to act as custodian of the property, and not permit the mortgagor to take or use it, without he, Nelson, should be with him.

This Nelson promised to do, and he was left in the stable when appellant and Mosher departed.

With the property in view and at hand, with nothing to hinder his removal of it, if he had seen fit, his direction to Nelson to take charge of it, and prevent its use or control by Burkhart, was an act of possession, which would have made him a trespasser if done without right or authority.

Why should the appellant or Mosher have taken the horses by the halters, and remove them from the stable, when the

mortgagor was willing to surrender them upon the mortgage, and did actually point them out, and then leased the stable in which they could be kept. If Burkhart had resisted the taking, and refused to allow the appellant or Mosher to occupy the stable, then the property should have been removed.

It can hardly be contended under the facts in this record, that if the sheriff had arrived at the stable immediately after the appellant had employed Nelson to take charge of the property, and while the parties were still there, the officer could have obtained priority over the mortgage, because no sufficient possession had been taken of the property under the mortgage, leaving out of the question the fact that the mortgage was not then due.

Was then the appellant liable for the subsequent neglect of Nelson in failing to retain the possession of the property after it was put in his charge as above stated?

The appellant testifies that after he received the mortgage and before it became due, he and Burkhart went to the house of appellee, and while there appellee told Burkhart that he did not want to press him, and that he would give him time for another year; that at that time it was arranged that a sale should take place, and that Burkhart's boy should buy in the teams and farming utensils, and then another mortgage could be given to run another year.

That it was arranged that when the property was taken under the mortgage it should remain upon Buckhart's farm and the appellee was to get Burkhart's boy to take charge of it. He testified further that he suggested to appellee that getting Buckhart's boy to take possession of the property was a little too near home, and that it would be better to get some outsider, and the appellee then suggested Nelson to act as custodian, and then it was agreed that Nelson should act as custodian, and further, that appellee suggested that Mosher should go along and cry the sale.

William Norton testified, that on the 20th, of April, 1879, he heard the following conversations between the parties: Gaines said to Becker: "You know, Mr. Becker, that the agreement was with Burkhart and you and me, that the prop-

erty was to be kept on the place.  Becker said:  " I know that, Mr. Gaines; but I calculated that there wasn't to be a stone unturned."

A Mr. Severn testifies:  "I heard a conversation between Gaines and Becker, in Gaines' store, in Victoria, in April, 1879.  Gaines said: ' Becker, you know very well that I have done just as you wanted me to, and that the property was to be left on the place.'  Becker said he knew that, but ' I didn't know the law, and I expected you did, and there wasn't to be a stone unturned.' "

Several other witnesses testify that when appellant informed the appellee that he put Nelson in the possession of the property, he expressed himself as satisfied, and that he would proceed against the sheriff for selling the property.

The appellee denies that any arrangement was made that ⁊elson should act as custodian, and says he has no recollection of Burkhart and Gaines being at his house together, although he says Burkhart was down two or three weeks before the sale, and wanted him to sell the property; and that he did not want to press Burkhart.  He also denies the conversations testified to by Norton and Severn.  We are constrained to say that the evidence very strongly preponderates in favor of the statement of the appellant, that it was agreed that Nelson should act as custodian of the property until the day of sale.  If this be so, we fail to see wherein the appellant is responsible for the negligence of the custodian.  Nelson was the man selected by the appellee, and presumably because he had confidence in 'his judgment and discretion; and when the appellant took possession of the property under the mortgage, and put a person of appellee's own selection in custody of it, certainly it would be the height of injustice to hold him responsible for the subsequent acts of such custodian.

It must be remembered that this suit is not between the mortgagee and the execution creditor, therefore the liability of appellant is not necessarily determined, from the fact that the property was by the act of the custodian rendered subject to the execution.

We are of the opinion that if the appellant took possession

of the property and gave it into the possession of Nelson, he being theretofore designated by the appellee as a fit person to act as custodian, and the agreement was that the property was to be left upon the premises of the mortgagor, then the appellant should not be held liable in this case.

We have not thought necessary to comment upon the instructions, as upon a new trial they can be made to conform to the views above expressed. The verdict we consider as being manifestly against the weight of the evidence as contained in this record.

The judgment will be reversed and the cause remanded for a new trial.

Reversed and remanded.