# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***United Transfer, Inc. v. Lorence*, 2011 IL App (2d) 110041**

| | |
|---|---|
| Appellate Court Caption | UNITED TRANSFER, INC., Petitioner and Respondent-Appellant, v. MICHAEL LORENCE, Respondent (Unique Green Services, LLC, Claimant; Tammy Aaron, Respondent-Appellee). |
| District & No. | Second District<br>Docket No. 2-11-0041 |
| Filed | November 15, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly dismissed a petition for an adjudication of indirect criminal contempt based on allegations that respondent directed the operation of certain vehicles in violation of a sheriff's levy and an order recognizing the levy, since there was no levy order in the record, the vehicles were not physically seized, no signs were posted, no stickers were placed on the vehicles announcing that they could not be driven, and the petition failed to sufficiently plead the existence of an order that respondent willfully and contumaciously violated. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 09-MR-1636; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal        John N. Dore and James M. Dore, both of John N. Dore & Associates, of Chicago, for appellant.

No brief filed for appellee.


Panel        PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Schostok and Hudson concurred in the judgment and opinion.


**OPINION**

¶ 1        On December 13, 2010, after a hearing, the trial court granted respondent Tammy Aaron's motion to dismiss petitioner United Transfer, Inc.'s (United's) amended petition for an adjudication of indirect criminal contempt against Aaron. The amended petition alleged that Aaron had directed the operation of certain vehicles in violation of a sheriff's levy and a prior court order recognizing the levy. United appeals. For the following reasons, we affirm.[1]

¶ 2                                        I. BACKGROUND

¶ 3        On October 30, 2009, United filed this proceeding to register a judgment entered in Cook County on its behalf against Michael Lorence and to avail itself of collection remedies against Lorence in Du Page County. According to United, on February 24, 2010, the Du Page County sheriff levied four vehicles.[2] There is no copy of a levy order in the record. There is no copy of an order issued by the trial court allowing a levy. There is, however, a document from the Du Page County sheriff's office entitled "Inventory of ~~Seized~~ Property" (the word "seized" is crossed out on the original) reflecting that, by virtue of "Order No. 09MR1636-001" (the Du Page County case number), four yellow trucks described by year, make, and vehicle identification number and parked in a lot with "Unique Recycling Services" logos

---

[1]Although Aaron did not file a response brief, we may decide the merits of this appeal under the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) (where the record is simple and the claimed errors are such that the reviewing court can decide them without the assistance of an appellee's brief, the court should address the merits of the appeal).

[2]A levy is the process whereby a sheriff or other state official empowered by a judicial directive seizes or brings within his or her control a judgment debtor's property for the purposes of satisfying a judgment. Black's Law Dictionary 907 (6th ed. 1990).

on them were seized on February 24, 2010.[3] The document reflects that Lorence was present at the time of inventory. It is undisputed that, although allegedly seized, the sheriff did not remove the vehicles from the parking lot in which they were located.

¶ 4    On February 26, 2010, Aaron appeared at a status hearing and claimed that her company, Unique Green Services, LLC (Unique Green), not Lorence, owned the four vehicles. In an order prepared by United's counsel, the court ordered Aaron to present all documentation related to the "ownership of the property the Sheriff has levied." On March 4, 2010, attorney Thomas Bouslog entered an appearance on Unique Green's behalf. The court, in an order prepared by United's counsel, ordered that discovery regarding the vehicles' history and ownership be initiated and that "the Sheriff's levy shall remain in force until further order of court."

¶ 5    On April 26, 2010, Unique Green moved to dismiss the sheriff's levy against the trucks owned by it. The motion asserted that Aaron is the sole member of Unique Green, that the judgment debtor, Lorence, is not a member, and that the assets against which the levy was asserted belonged to Unique Green and, therefore, that the levy was wrongful. United responded that Lorence and Aaron were involved in a personal relationship and that it believed that Lorence, to avoid creditors, transferred the vehicles from his prior business, Unique Recycling Service, Inc., to Unique Green. It further noted that, according to the description provided in the sheriff's levy (presumably the inventory), Unique Recycling logos remain on the vehicles that Aaron claims are owned by Unique Green.

¶ 6    On June 1, 2010, United petitioned for leave to issue rules to show cause against Aaron and Unique Green on the basis that, on May 28, 2010, two trucks subject to the levy were operated outside the gates where the sheriff seized them. The petition noted that, although the sheriff levied the vehicles, they were not physically removed and remained parked in the lot where they were levied (apparently, Unique Green's parking lot). According to United, the use of the vehicles seized by the sheriff and subject to the court's jurisdiction, as reflected in the March 4, 2010, order, constituted indirect criminal contempt.

¶ 7    On June 21, 2010, Aaron responded to the petition and admitted that the vehicles were listed on the sheriff's inventory of property, but denied that those vehicles were levied upon and/or seized. Further, Aaron offered as an affirmative defense that someone crossed out the word "seized" on the sheriff's inventory of property and that no one from Unique Green was served with or received a copy of the inventory prior to June 1, 2010, when a copy was attached to the petition for rule to show cause. Accordingly, Aaron requested that the petition for rule to show cause be dismissed.

¶ 8    On July 1, 2010, United was granted leave to file an amended petition for indirect criminal contempt. At a hearing, Bouslog and Aaron were present, and Bouslog represented that he was present on behalf of Unique Green and Aaron. Bouslog stated that "we are willing to stipulate to those two trucks being used on May 28, 2010, as alleged in the petition." Bouslog reiterated that he and Aaron were unaware of the levy until June 1, 2010.

---

[3]Although the inventory is dated February 24, 2010, it does not appear in the record until June 1, 2010, as an attachment to United's petition for a rule to show cause against Aaron.

¶ 9 On July 12, 2010, United filed an amended petition for adjudication of indirect criminal contempt against Aaron, which was substantially similar to its original petition. The amended petition added, however, that Aaron had appeared at the February 26, 2010, court hearing and had received the court's order that day. Further, it noted that Unique Green and Aaron had, on multiple occasions, acknowledged the existence of the sheriff's levy on the vehicles. Finally, it noted that, as sole member of Unique Green, Aaron had the exclusive authority to determine whether and how the vehicles subject to the levy would be utilized and to direct or authorize employees or agents of Unique Green to operate those vehicles. It alleged that Aaron in fact directed and authorized operation of the vehicles subject to the levy, with knowledge that those vehicles were subject to the court's authority as a result of its March 4, 2010, order, and that her conduct in directing and allowing vehicles subject to the levy to be operated in Unique Green's business was willful and contumacious. United requested that the court find that Aaron willfully and contumaciously violated the February 24, 2010, levy and the March 4, 2010, court order, and that it order Aaron incarcerated for a period not exceeding six months.

¶ 10 Aaron answered the petition by denying most of the allegations, including the allegation that the vehicles were levied. Further, Aaron moved for a bill of particulars on the basis that, "even presuming violating a Sheriff's Levy could constitute contempt of court, said amended petition does not allege what, if anything, the levy [and March 4, 2010, court order] directed or commanded the respondent to do, or not do." Thus, Aaron requested that United set forth the exact language of the sheriff's levy and court order that she allegedly violated.

¶ 11 On November 22, 2010, Aaron moved *in limine* to bar certain evidence on the basis that Bouslog, who had filed an appearance on behalf of Unique Green, did not properly represent to the court that he represented Aaron personally and that no appearance had been filed on Aaron's behalf. The court granted the motion, as well as Aaron's motion for a bill of particulars.

¶ 12 On December 7, 2010, Aaron moved to dismiss the amended petition for indirect criminal contempt pursuant to section 114-1(a)(8) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-1(a)(8) (West 2008)), on the basis that, despite the court's November 22, 2010, order, United did not respond to Aaron's bill of particulars. Therefore, she argued, the petition for indirect criminal contempt, by failing to allege what, if anything, the sheriff's levy or court order directed her to do, failed to state an offense. Further, Aaron moved to quash subpoenas ordering that she and Bouslog testify and produce documents on United's behalf in the criminal matter.

¶ 13 On December 13, 2010, the court held a hearing on Aaron's motion to dismiss the criminal contempt petition. Aaron argued that the petition for contempt failed because United failed to identify a court order that proscribed conduct that, even if Aaron acted knowingly and willfully, would place her in contempt of court. Aaron's new counsel argued, "[H]ow is the court going to rule on this to find out whether [Aaron] is in contempt or not if you don't know what actions she was supposed to do or wasn't supposed to do? It has not been set forth."

¶ 14 United responded that no particulars beyond the existence of a levy were necessary

because the law is clear that one may not interfere with seized property. "It's a known fact. So you don't have to have other and special disclosures. It's like saying do not steal something. That is a known fact. There is a law." United noted that, two days after the levy was effected, Aaron appeared before the court and claimed ownership of the vehicles that were subject to the levy. Accordingly, it argued, it was clear that Aaron had specific and direct personal knowledge that those vehicles were subject to a levy.

¶ 15    The court granted Aaron's motion to dismiss. It noted that it did not have a copy of a levy order and that, despite counsel's representation that there existed in the record a court order allowing a levy, the record reflected only an initial complaint and, on February 26, 2010, after the levy purportedly issued, an order continuing the matter for status. The court noted that the sheriff's inventory is not a levy. Accordingly, as to the existence of the order that was allegedly the basis for the criminal contempt petition, the court stated, "I have nothing." United argued to the court that the levy is the Cook County judgment that was registered and issued for the sheriff to effectuate a levy, but the court reiterated that United was alleging that Aaron violated a Du Page County order and noted that United had not cured

> "the basic infirmity of [its] petition. A petition for order of indirect criminal contempt requires that the defendant be alleged to have violated an order of this court. You have not given me anything, any order that I signed or any levy, that directs Ms. Aaron to do anything or directs anyone to do anything with regard to these vehicles. Your case is totally lacking in the basics of due process. You have not presented me with anything that shows Ms. Aaron was directed to do or refrain from doing anything, taking any action or refraining from taking any action. *** There is nothing, I repeat nothing on which I could find Ms. Aaron guilty of criminal contempt of court for violation of an order. If you are relying on the ancient case that says interference with the Sheriff constitutes contempt of court, I believe it is the Sheriff's duty to bring that to my attention. I don't believe you or your client have any standing to bring an action for indirect criminal contempt based on these facts and circumstances. [Even if the petition may be brought by an individual other than a prosecutory authority], that does not cure the basic infirmity that you have not directed me to any order of court or anything that would put Ms. Aaron on actual notice that moving these vehicles would be an act of criminal contempt of court."

The contempt petition was dismissed and the related subpoenas discharged. United appeals.

¶ 16                                    II. ANALYSIS

¶ 17    United's two overarching arguments on appeal are that the trial court: (1) improperly dismissed the petition for indirect criminal contempt; and (2) erred in quashing subpoenas and effectively barring from evidence in the criminal prosecution admissions and stipulations made by Bouslog. For the following reasons, we conclude that the trial court did not err in dismissing the criminal contempt petition. Accordingly, we need not reach the second issue concerning evidence to be used in the criminal prosecution.

¶ 18    The purpose of contempt proceedings is to maintain the dignity of the court and to enforce its orders by punishing contemnors for disobedience. *People v. Lindsey*, 199 Ill. 2d

460, 468 (2002). Criminal contempt sanctions punish a contemnor for past acts that cannot be undone; indirect criminal contempt is a subcategory of criminal contempt for those situations where the contemptuous conduct occurs outside of the court's presence. *Id.* at 468-69. Two elements must be proved to sustain an indirect criminal contempt finding: (1) the existence of a court order; and (2) a willful violation of that order. *People v. Totten*, 118 Ill. 2d 124, 138 (1987). A person charged with indirect criminal contempt is entitled to the constitutional protections afforded criminal defendants and to be proved guilty beyond a reasonable doubt. *People v. Covington*, 395 Ill. App. 3d 996, 1007 (2009). We review *de novo* a trial court's dismissal of a criminal complaint for failure to state an offense. *People v. Terry*, 342 Ill. App. 3d 863, 867-68 (2003). We conclude that the trial court properly dismissed the petition for indirect criminal contempt.

¶ 19    Here, as noted by the trial court, the petition for contempt presumes the existence of a levy order. There is no such order in the record. There is no court order in the record that orders a levy. The record contains only a sheriff's inventory, with the word "seized" crossed out and reflecting that Lorence was present for the inventory. The court's order of March 4, 2010, did not order a levy; it, too, presumed the existence of a levy. We agree with the trial court that a petition for indirect criminal contempt, which requires proof beyond a reasonable doubt of the existence of an order (*Totten*, 118 Ill. 2d at 138), fails where the petition fails to demonstrate, in fact, the existence of the order that forms the basis of the petition.

¶ 20    Further, even if, as United alleges, Aaron conceded the existence of the levy in various pleadings and by her appearance at the hearing to dispute ownership of the levied vehicles, there is nothing in United's petition alleging what, specifically, the levy's orders were with respect to Aaron. Assuming Aaron knew of the alleged levy, the petition does not allege the mandates of the order such that a finding of a willful violation of the order could possibly be sustained. United argues that such allegations are unnecessary because a levy, by its very nature, vests in the officer enforcing it ownership interests in the seized goods and, therefore, a person cannot interfere with the officer's interests absent a court order. *Pearl v. Wellman*, 8 Ill. 311, 321 (1846). United argues that disclosures of the levy's mandates are unnecessary because "it is a known fact" that one cannot "interfere with the possession of seized property in the possession of the sheriff." It further notes that it is not essential for the sheriff to remove the property to effect a levy. *Gaines v. Becker*, 7 Ill. App. 315, 318 (1880). Nevertheless, United misses the critical point that the existence of a levy and what it requires must be *communicated* in order for one to willfully violate it. In *Gaines*, for example, the court noted that, while an actual seizure or "manual caption" is not essential to effectuate a levy, "the acts of the officer must be open and unequivocal," and "[t]here can be no doubt that where the levy is sought to be sustained as against third parties acquiring an interest in the property, the levy must be proven with greater strictness than when the rights of the defendant only are involved, and that in the former case a mere 'pen and ink' levy will not avail." (Internal quotation marks omitted.) *Id.* at 317-18.

¶ 21    Here, Aaron is not the judgment debtor and the vehicles were not physically seized; therefore, according to *Gaines*, the levy must be proved with great strictness and the seizure actions must be open and unequivocal. However, the petition here does not allege that the seizure was open and unequivocal such that Aaron would know what *she* could or could not

do. For example, the petition does not allege that there were signs posted throughout the parking lot, or stickers posted on each vehicle, announcing that they were seized by the sheriff and that they could not be driven by Aaron or anyone in her employ. In contrast, the only document presented by United in support of the alleged levy is an inventory with the word "seized" crossed out. The allegedly seized vehicles remained parked in the parking lot of Aaron's place of business. The petition does not allege how the existence of the alleged levy and its *mandates* were communicated to Aaron, a third person, who claims an ownership interest in the property. Thus, there is nothing in the petition alleging the "open and unequivocal" actions that *Gaines* contemplates for levies that do not physically seize the property.

¶ 22 Nevertheless, United claims, any failure on Aaron's behalf to know that "interference" constitutes contempt is inexcusable ignorance of the law. However, the questions that the petition fails to address are what, here, constitutes contemptuous interference and how that was communicated to Aaron. United cites *Anderson v. Macek*, 350 Ill. 135, 137 (1932), for the broad proposition that "any interference" with a court officer's possession of property, without court permission, constitutes contempt. However, in *Anderson*, the court officer padlocked the doors, locked all windows, and posted notices on the seized property stating that, by court order, anyone interfering with the court's possession would be ruled to show cause why he or she should not be cited for contempt. Further, the facts established that, in addition to those measures announcing the seizure, the defendant had personal knowledge that the property had been seized. Nevertheless, and without court permission, the defendant used a screwdriver and pliers to break through the padlocked doors, entered the premises, and removed property. *Id.* at 136-37. Here, where there are no allegations that the seizure was announced in such a way as to make clear that driving the vehicles (as opposed to selling the vehicles, moving the vehicles, opening the vehicles' doors to retrieve ownership information, cleaning off the vehicles' windows, etc.) constitutes interference with a levy order and contempt of court, the petition fails to establish that Aaron's conduct reflected a violation of the mandates of that order, let alone a willful violation.

¶ 23 Similarly, we reject United's reliance on authority reflecting that contempt may arise from attempting to take property from an officer's possession (*Gates v. People*, 6 Ill. App. 383, 386 (1880) (sheriff did not remove seized jewelry from store, but left it in custody of debtor's employee; third party entered the store and removed the goods levied)), or from concealing or refusing to deliver property so that it cannot be taken (735 ILCS 5/12-301 (West 2008)), where none of the petition's allegations assert that Aaron tried to conceal the property or take it from the sheriff. Instead, Aaron is accused of violating the order by directing and/or allowing vehicles to be used. In our view, where the vehicles were not removed from Unique Green's parking lot, and there are no allegations that *Aaron* had direct notice of the levy and its dictates or that such dictates were obvious on the vehicles themselves or in the parking lot, we agree that the petition for criminal contempt fails to sufficiently plead the existence of an order that Aaron willfully and contumaciously violated.

¶ 24 Accordingly, we do not reach United's argument on appeal regarding whether Bouslog's alleged admissions on Aaron's behalf should be admissible at the criminal contempt hearing. We note, however, that none of the alleged admissions (*i.e.*, that Aaron had a personal

relationship with Lorence, that Unique Green operated the vehicles on May 28, 2010, and that one of those vehicles was listed on the sheriff's inventory of property) would alter our foregoing analysis because, at best, they concern Aaron's alleged knowledge of the existence of a levy, a fact we presume for purposes of our analysis, but they do not concern any knowledge by her or communication to her regarding the levy's scope of prohibited conduct such that a willful violation could be found.

¶ 25                                    III. CONCLUSION

¶ 26        For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 27        Affirmed.