2023 IL App (2d) 220350-U
No. 2-22-0350
Order filed June 7, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF CURRENS CARTY, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 19-DV-963 |
| ROBERT CARTY, | ) ) ) | |
| Respondent-Appellant. | ) ) | |
| (The People of the State of Illinois, Plaintiff-Appellee, v. Robert Carty, Defendant-Appellant). | ) ) ) | Honorable Mark R. Facchini, Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in (1) admitting records of the respondent's breath test results; and (2) finding respondent guilty of indirect criminal contempt.  Affirmed.

¶ 2    After the dissolution of the marriage of petitioner, Currens Carty, and respondent, Robert

Carty, Currens petitioned for adjudication of indirect criminal contempt against Robert, alleging

that he violated a provision in the dissolution judgment that required him to provide results of

breath tests measuring his blood-alcohol content (BAC) during times he was with the parties' two children. At trial, the trial court admitted into evidence a report of Robert's breath test results, determined that Robert had failed to provide breath results on certain dates, and further found him guilty of indirect criminal contempt. Robert was sentenced to two days in jail and ordered to pay a $400 fine. Robert appeals, arguing that the trial court erred in (1) admitting into evidence the report of his breath tests; and (2) finding him guilty of indirect criminal contempt. We affirm.

¶ 3                                I. BACKGROUND

¶ 4      The parties married in 2006. They have two children: C.C. (born January 20, 2010) and S.C. (born June 12, 2017).

¶ 5      On January 11, 2022, the trial court dissolved the parties' marriage and entered an allocation judgment, allocating their parental responsibilities and a parenting plan. The judgment provided, at section 4.2, that:

> "Father shall have parenting time with the children except when Mother has parenting time with the children[,] provided that Father is sober (blood alcohol level of 0.0). If Father is unavailable for his parenting time, the children shall have parenting time with Father's parents. Father shall provide breathalyzer results from a device that is date and time stamped with face recognition twice a day 11:00 a.m. and 9:00 p.m. during his parenting time and at the commencement of his parenting time upon receipt of the children, or at the random request of the Guardian *Ad Litem* for a period of no less than 12 months from the date of Judgement or further order of court. If either party tests positive[,] they shall not be present around the children. *[(1)] If Father refuses to take a breathalyzer test or [(2)] tests above 0.00 BAC[,] he shall not be in the presence of the children*." (Emphasis added.)

The judgment did not address the admissibility of the breathalyzer test results or the absence of any results.

¶ 6    On May 18, 2022, the trial court entered an order modifying the allocation judgment to require tests to occur at 7 a.m. and 7 p.m. and to require that test results be provided to Currens by providing access (*i.e.*, via her email address) to Robert's BACtrack[1] account.

¶ 7            A. Currens' Petition for Adjudication of Indirect Criminal Contempt

¶ 8    On June 30, 2022, Currens petitioned for adjudication of indirect criminal contempt, alleging that Robert violated the allocation judgment by (1) missing breath tests on multiple days in May and June 2022[2]; and (2) producing breath test results showing a blood alcohol content in excess of 0.00 on seven days in May and June 2022.[3]   Currens asserted that Robert willfully and contumaciously refused to comply with the terms of the court's January 11, and May 18, 2022, orders, and his failure to comply was without compelling cause or justification.

¶ 9                          B. Currens' Motion *in Limine*

¶ 10    On September 22, 2022, Currens filed a motion *in limine*, seeking admission, pursuant to Illinois Rules of Evidence 803(6) and 902(11) (Ill. R. Evid. 803(6) (eff. Jan. 25, 2023); Ill. R. Evid. 902(11) (eff. Sept. 28, 2018)) of a BACtrack activity report of Robert's breath test results from January 20 to September 12, 2022.  The data compilation, attached as exhibit A, consisted of date- and time-stamped data of breath test results, including the date, time, and resulting blood alcohol content for various tests.  As relevant here, the May data ran from May 9 through 31, 2022, but

---

[1]Robert utilized a breath test device from the BACtrack company.

[2]May 2, 3, 4, 5, 14, 16, 17, 19, and 23, 2022, and June 6, and 8 through 29, 2022.

[3]May 10, 15, 18, 24, and 27, 2022, and June 2 and 7, 2022.

did not include every date in May. The June data started on June 1 and ended on June 7, 2022. For the included dates, the results stated either (1) "BAC test taken; BAC level: [measured BAC level]"; or (2) with respect to two dates,[4] "Scheduled test was missed."

¶ 11    Currens also attached exhibit B, which consisted of a business records authentication of certification signed, under penalties of perjury (735 ILCS 5/1-109 (West 2020)), by the custodian of records of BACtrack Breathalyzers/KHN Solutions, Inc.

¶ 12    On September 28, 2022, at a hearing on the motion *in limine*, which occurred on the day of, and immediately before, trial, Robert sought to have additional time to prepare to address the motion. The court denied his request. During arguments, Robert's counsel asserted that he had insufficient notice. He also argued that, to the extent the exhibit was a business record showing results that were recorded and that the company kept, it may be admissible; however, he continued, the issue was whether it was accurate or authentic. "They merely show there was a lack of a test done. They don't show why there was no test done, whether [Robert] actually blew into the device and it didn't record[.]" He also objected as to lack of foundation that the tests produced accurate results. Accordingly, Robert's counsel summarized that his client objected to the admission of the exhibit, "unless it's limited to the very narrow purpose of showing that this is what the record of

---

[4]The exhibit shows four results on May 28, 2022: (1) at 6:59 a.m., a test was taken, and BAC level 0.000 recorded; (2) at 6:35 p.m., a scheduled test was missed; (3) again, at 6:35 p.m., a scheduled test was missed; and (4) at 7:30 p.m., a test was taken, and BAC level 0.000 recorded. It further shows three results for June 4, 2022: (1) at 6:56 a.m., a test was taken, and BAC level 0.000 recorded; (2) at 6:57 a.m., a test was taken, and BAC level 0.000 recorded; and (3) at 9:55 a.m., a scheduled test was missed.

the company shows as to tests taken and not—of test results that they have.  Whether or not those results are truthful or not, we don't know."  Currens[5] argued that the results were business records produced by the company on which the parties agreed in their judgment that Robert would use for submission of breath test results and that they met the requirements and evidentiary rules for admission.

¶ 13    The trial court granted the motion and admitted, as exhibit No. 1, the data compilation.  It further found that the certification complied with Rules 803(6) and 902(11) and that Robert's objections went to the weight to give the records, not their admissibility.

¶ 14                                     C.  Trial

¶ 15    The case next proceeded to a bench trial.  The prosecution presented Currens' testimony.

¶ 16    Currens testified that she and Robert have two children, ages 5 and 12, and that she has parenting time on Wednesdays and every other weekend, during which she must be supervised by one of four individuals.  Robert has the remainder of the time that Currens does not have, and his restrictions include that he be sober and submit to breath tests.

¶ 17    Via court order, Currens has access to Robert's breath test results.  She logs into BACtrack on her computer to access the results, and she receives BACtrack information from Robert.  Currens logs into the account daily.  The system displays results on a calendar, with green representing passing and red representing not passing.  Currens identified exhibit No. 1, which

---

[5]The State was represented by Currens' counsel.  See *In re Marriage of Betts*, 200 Ill. App. 3d 26, 59, (1990) ("Indirect criminal contempt charges may be prosecuted by either the State's Attorney, counsel for a litigant, or *amicus curiae* appointed by the court.").

consisted of Robert's test results. She testified that the results in the exhibit were consistent with the results she reviewed when she logged into Robert's BACtrack account.

¶ 18    In May 2022, Currens had parenting time with the children on Wednesdays: May 4, 11, 18, and 25. She also had parenting time during the weekends of May 6 through 8 and May 20 through 22. Her Wednesday parenting time was from 3:30 p.m. to 7:30 p.m., and her weekend parenting time began on Friday at 3:30 p.m. and ended on Sunday at 5 p.m. In June 2022, Currens had parenting time on June 1, 8, 15, 22, and 29. Her June weekend parenting time was on June 3 through 5 and June 17 through 19.

¶ 19    The prosecution rested. Robert moved for a directed finding, arguing that no testimony was offered from someone at the testing company addressing the reliability of the breath test results or testimony that Robert was with the children on the challenged dates.

¶ 20    First, the trial court found that exhibit No. 1 was a business record and showed eight dates in May and June 2022 during which there were test results greater than 0.00 (ranging from 0.01 to 0.147). However, the court noted that there was no evidence that Robert was parenting the children when his breath alcohol level was over 0.00. Thus, as to the provision in the allocation judgment that required Robert to be sober in order to be in the children's presence, the court granted the motion. Second, as to the provision addressing missed dates, which the court noted required testing but not that the children be present, the court denied the motion, finding that there was evidence that Robert did not test on the days he was required to test.

¶ 21    Robert called Currens. Currens testified that she was not present on the challenged dates and did not know if Robert attempted to blow into the breath test device. She is unaware how often BACtrack machines are certified or tested for accuracy. On cross-examination, she testified

that, between May 2 and June 29, 2022, Robert did not indicate to her that he was having issues with his BACtrack device or that the device malfunctioned when he submitted a test.

¶ 22                              D.  Trial Court's Findings

¶ 23     The trial court found Robert guilty of indirect criminal contempt as to certain *missed* breath tests, in violation of its prior orders.  Specifically, the court determined that Robert failed to conduct a breath test, twice per day, on May 2, 3, 4, 5, 14, 16, 17, 19, and 23, 2022, and June 6, 8 through 16, and 20 through 29, 2022.  (None of the foregoing dates are listed in exhibit No. 1.) The court sentenced Robert to two days in jail and imposed a $400 fine.  Robert appeals.

¶ 24                              II. ANALYSIS

¶ 25     Robert argues that the trial court erred in (1) admitting the breath test results, as he had insufficient notice and as the results lacked adequate foundation as to their admissibility or accuracy; and (2) finding that he was guilty of indirect criminal contempt.  For the following reasons, we reject Robert's arguments.

¶ 26                     A. Admission of Breath Test Results

¶ 27     Robert argues first that the trial court erred in admitting the breath test results, because he was provided insufficient notice of the results report and the results lacked adequate foundation as to their admissibility or accuracy.  He contends that a business record may be admitted under Rule 902(11) if accompanied by a written certification establishing certain foundational requirements and if the party intending to offer the record provides written notice to all parties sufficiently in advance to allow an adverse party a fair opportunity to challenge the record.  However, he continues, "where a party intends to offer a record or data to prove the nonexistence of an act or event because such an act or event is not included in the record or data compilation, the proponent must further establish that the act or event was of a kind of which a record or data compilation was

regularly made or preserved." See Ill. R. Evid. 803(7) (eff. Jan. 25, 2023). Illinois Rule of Evidence 803(7), he notes, contains no mechanism for self-authentication of this foundational requirement by certification.

¶ 28 Currens responds that (1) Robert received ample notice of Currens' intent to admit the report and has forfeited any specific objection to its admission; (2) in any event, the report was correctly admitted as a self-authenticating business record under Rules 803(6) and 902(11); and (3) any error in its admission was harmless because the fact that Robert failed to provide breath test results was also proved through Currens' testimony.

¶ 29 As relevant here, the allocation judgment provides that Robert shall provide breathalyzer test results and states that, if Robert "refuses to take a breathalyzer test," he cannot see his children. Exhibit No. 1 includes data for certain, but not all, dates in May and June 2022 and specifies for each listed date either an alleged BAC level or, with respect to two dates, that a "[s]cheduled test was missed." In her motion *in limine*, Currens sought to admit the BACtrack activity report pursuant to Rules 803(6) and 902(11). The trial court granted her motion and further found that the certification complied with these rules and that Robert's objections went to the weight to give the records, not their admissibility.

¶ 30 The admissibility of evidence is within the trial court's discretion, and its decision will not be disturbed absent an abuse of that discretion. *People v. Pikes*, 2013 IL 115171, ¶ 12. An abuse of discretion occurs only when the trial court's decision is unreasonable. *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 31 Illinois Rule of Evidence 803(6) (eff. Apr. 26, 2012) sets forth a hearsay exception for records of "regularly conducted business activity" (commonly referred to as the business records exception to hearsay). A business record is admissible hearsay if its proponent establishes (1) that

the record was made as a memorandum or record of the act, (2) that the record was made in the regular course of business, and (3) that it was the regular practice of the business to make such a record at or near the time of the act. Ill. R. Evid. 803(6) (eff. Jan. 25, 2023)[6]; see also *People v. Ramos*, 2018 IL App (1st) 151888, ¶ 22. Further, some business records are self-authenticating. Ill. R. Evid. 902(11) (eff. Sept. 28, 2018).[7] Indeed, Rule 803(6) provides that a foundation for the

---

[6]Illinois Evidence Rule 803(6) provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\*\*\*

(6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, *all as shown* by the testimony of the custodian or other qualified witness, *or by certification that complies with Rule 902(11), unless the opposing party shows that the source of information or the method or circumstances of preparation indicate lack of trustworthiness*. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit." (Emphases added.) Ill. R. Evid. 803(6) (eff. Jan. 25, 2023).

[7]Illinois Rule of Evidence 902(11) states, in relevant part:

admissibility of a record of regularly conducted activity may consist of a certification that complies with Rule 902(11). Ill. R. Evid. 803(6) (eff. Jan. 25, 2023). To be self-authenticating, a business record must be accompanied by a certification from the records custodian or other qualified person attesting to the foundational requirements for admission of a business record. *Id.*; see also *Ramos*,

---

"Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

\* \* \*

(11) Certified Records of Regularly Conducted Activity. The original or a duplicate of a record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written certification of its custodian or other qualified person that the record

(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of these matters;

(B) was kept in the course of the regularly conducted activity; and

(C) was made by the regularly conducted activity as a regular practice.

The word 'certification' as used in this subsection means with respect to a domestic record, a written declaration under oath subject to the penalty of perjury \*\*\*. A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and certification available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them." Ill. R. Evid. 902(11) (eff. Sept. 28, 2018).

2018 IL App (1st) 151888, ¶ 23. Accordingly, self-authenticating business records do *not* require trial testimony. *People v. Crump*, 2018 IL App (3d) 160124, ¶ 19.

¶ 32 We first conclude that Robert had sufficient notice to challenge the admission of the breath test results. The hearing on the motion *in limine* occurred six days after the motion was filed. This was ample time, especially in light of the fact that the data was from his BACtrack device. Furthermore, the petition itself was predicated on Robert's failure to test or his submission of test results in excess of the level set in the court's orders. Any argument that he lacked sufficient notice of the results report is not well taken.

¶ 33 Next, turning to the trial court's bases for admitting the exhibit, the court found that the certification and test results were admissible under Illinois Rules of Evidence 803(6) and 902(11) and admitted the exhibit into evidence as a self-authenticating business record. The authentication by certification exhibit Currens attached to her petition for adjudication of indirect criminal contempt stated that, pursuant to Rules 803(6) and 902(11), "the attached records were made at or near the time of the occurrence for the matters set forth by, or from information transmitted by, a person with knowledge of these matters; were kept in the course of regularly conducted activity; and were made by the regularly conducted activity as a regular practice." The exhibit also stated that, pursuant to Illinois Supreme Court Rule 236[8] (eff. Aug. 1, 1992) (admission of business

---

[8]Illinois Supreme Court Rule 236(a) provides:

"Any writing or record, whether in the form of any entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or

records), the records "were made in the regular course of business and said records were kept in the course of the regularly conducted activity. Furthermore, it was the regular course of business to make such records contemporaneously with the act, transaction, occurrence, or event or within a reasonable time thereafter." Furthermore, as noted, the custodian of records certified, under penalties of perjury, as to the truth of the matters stated.

¶ 34    We conclude that the trial court did not abuse its discretion in admitting exhibit No. 1. The language in the certification conforms to Illinois Rule of Evidence 902(11). Mirroring the language in Rule 902(11), it states that it was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by a person with knowledge of the matters, kept in the course of regularly conducted activity, and made by the regularly conducted activity as a regular practice. Also, it is signed under penalties of perjury. The breath test results contain date and time stamped BAC data for certain dates in May and June 2022. Robert offered argument challenging the accuracy of the data in the exhibit. He posited that the data did not reflect why there was no test done on certain dates or whether he actually blew into the device and it did not record. See Ill. R. Evid. 803(6) (eff. Jan. 25, 2023) (allowing admission of business records under certain circumstances, "unless the opposing party shows that the source of information or the method or circumstances of preparation indicate lack of trustworthiness"). However, the trial court

within a reasonable time thereafter. All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility. The term 'business,' as used in this rule, includes business, profession, occupation, and calling of every kind." Ill. S. Ct. R. 236(a) (eff. Aug. 1, 1992).

did not find Robert's concerns persuasive, and we cannot conclude that the court's assessment was unreasonable.

¶ 35 Nevertheless, relying on Rule 803(7), Robert argues for the first time on appeal that, where a party intends to offer a record or data compilation to prove the *nonexistence* of an act or event such as one not included in the record or data compilation, the proponent must further establish, *via testimony*, that the act or event was of a kind of which a record or data compilation was regularly made and preserved. Rule 803(7),[9] he contends, provides no mechanism for self-authentication of the foundation requirement by certification in the same manner that Rule 803(6)'s requirements may be self-authenticated by certification. Robert also addresses for the first time on appeal Illinois Evidence Rules 902(12) and 902(13) (Ill. Evid. Rs. 902(12), (13) (eff. Sept. 28, 2018)), arguing that, where a party wishes to admit a business record that purports to be generated

---

[9]Illinois Evidence Rule 803(7) provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\*\*\*

(7) Absence of Entry in Records Kept in Accordance With the Provisions of Paragraph (6). Evidence that a matter is not included in the memoranda reports, records, or data compilations, in any form, kept in accordance with the provisions of paragraph (6), to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly made and preserved, unless the opposing party shows that the sources of information or other circumstances indicate lack of trustworthiness." Ill. Evid. R. 803(7) (eff. Jan. 25, 2023).

by an electronic process or system that produces an accurate result, this foundation must further be established within the requisite certification (Ill. R. Evid. 902(12) (eff. Sept. 28, 2018)), and the same is true, he contends, where a party wishes to offer a business record based upon data copied from an electronic device (Ill. R. Evid. 902(13) (eff. Sept. 28, 2018)).[10]

¶ 36    We decline to address Robert's argument that, notwithstanding the exhibit's admissibility under Rules 803(6) and 902(11), Currens was required to establish its admissibility under Rules 803(7), 902(12), and 902(13).   Robert raises this argument for the first time on appeal and, therefore, it is forfeited.  *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996) (issues not

---

[10]Rules 902(12) and 902(13) provide:

"Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

***

(12) Certified Records Generated by an Electronic Process or System.  A record generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the procedural requirements for Rule 902(11) certification.  The proponent must also meet the notice requirements of Rule 902(11).

(13) Certified Data Copied from an Electronic Device, Storage Medium, or File.  Data copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the procedural requirements for Rule 902(11) certification.  The proponent also must meet the notice requirements of Rule 902(11)." Ill. Evid. Rs. 902(12), (13) (eff. Sept. 28, 2018).

raised in the trial court are deemed forfeited and may not be raised for the first time on appeal). Robert states in his brief that it is "unclear" if the trial court considered the application of these rules, and, at oral argument, he conceded that his argument is "a stretch." At the hearing, Robert's counsel objected to admission of the exhibit by arguing that the exhibits Currens attached to her motion *in limine* did not show that the results were accurate. "They merely showed that there was a lack of a test done. They don't show why there was no test done, whether [Robert] actually blew into the device and it didn't record, and they don't show—There's nobody here to testify as to any malfunction or the authenticity of it[.]" Counsel added, "Whether or not those results are truthful or not, we don't know." Counsel never referenced Rules 803(7), 902(12), or 902(13). In announcing its ruling, the trial court noted counsel's objections and stated that they went to the weight to give the exhibit, not its admissibility. As noted, Currens' motion explicitly sought admission of exhibit one pursuant to Rules 803(6) and 902(11), and the trial court, in announcing its findings, explicitly referenced Rules 803(6) and 902(11). In our view, the court clearly did not consider Rule 803(7), 902(12), or 902(13), and Robert failed to raise them before the trial court. His arguments concerning the accuracy of the breath test results did not reasonably reflect that he was relying on these rules. In fact, the record shows counsel was relying on Rule 803(6), because Rule 803(6) states that an opposing party can challenge the trustworthiness of the information or its method of preparation (Ill. R. Evid. 803(6) (eff. Jan. 25, 2023)), which is clearly what counsel did, albeit unsuccessfully.

¶ 37    In summary, the trial court did not abuse its discretion in admitting exhibit No. 1.

¶ 38                    B. Sufficiency of Evidence

¶ 39    Next, Robert argues that the evidence was insufficient to sustain his conviction.

¶ 40    "The purpose of contempt proceedings is to maintain the dignity of the court and to enforce its orders by punishing contemnors for disobedience." *United Transfer, Inc. v. Lorence*, 2011 IL App (2d) 110041, ¶ 18. Criminal contempt sanctions are imposed where the contemnor's acts were in the past and cannot be rectified; indirect criminal contempt is a subcategory of criminal contempt and occurs where the contemptuous behavior was outside of the court's presence. *Id*. To sustain a finding of indirect criminal contempt, the prosecution must prove beyond a reasonable doubt "(1) the existence of a clear court order, and (2) the willful violation of that order." *People ex rel. City of Chicago v. Le Mirage, Inc.*, 2013 IL App (1st) 093547-B, ¶ 53; *People v. Covington*, 395 Ill. App. 3d 996, 1008 (2009). To satisfy the first element, the would-be contemnor must have received fair and precise notice of what the order prohibited. *Id.* Willfulness, the second element, may be inferred from the allegedly contemptuous conduct, including the surrounding circumstances and the character of the party's conduct. *People v. Simac*, 161 Ill. 2d 297, 307 (1994); see also *People v. Roush*, 112 Ill. App. 3d 689, 691 (1983) ("intent may be either proved affirmatively or inferred from proof of the surrounding circumstances and the character of the action of the respondent"). The standard of proof is beyond a reasonable doubt. *Lorence*, 2011 IL App (2d) 110041, ¶ 18.

¶ 41    A person charged with indirect criminal contempt is entitled to the same constitutional protections as other criminal defendants. *People v. Perez*, 2014 IL App (3d) 120978, ¶ 20. These constitutional protections include, for example, the right to counsel, to change of judge, to be presumed innocent, to be charged by written notice, and to be proven guilty beyond a reasonable doubt. *In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 31. "In addition, the trial court must admonish [the] defendant of his [or her] constitutional rights." *Id.*

¶ 42    A reviewing court will not disturb a trial court's finding of indirect criminal contempt if, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Townsend*, 183 Ill. App. 3d 268 (1989).

¶ 43    Robert contends that no evidence was presented of intent. He maintains there was no evidence that any alleged noncompliance was done willfully, where, for example, he could have been hospitalized and unable to physically perform a test, the BACtrack device could have been malfunctioning without Robert's knowledge, etc. The records in exhibit No. 1 alone, he asserts, cannot support a finding of intent. He also again raises arguments concerning the accuracy of the test results.

¶ 44    We conclude that the evidence was sufficient to sustain Robert's conviction. His actions reflect contemptuous conduct, in that he failed to follow the dictates of the allocation judgment. Robert is required to submit to breath tests to see his children during his allocated parenting time. The court admitted the breath test results (which lacked testing data for certain dates) and heard Currens' testimony, and it determined that Robert failed to test on several dates in May and June 2022 during which he had parenting time. Currens, who has access to Robert's BACtrack account, testified that she logs into it daily. The results in the exhibit were consistent, she stated, with the results she viewed when she logged into Robert's account. Although she was not present when Robert tested on the challenged dates and did not know if he attempted to blow into the device, she also testified that Robert did not indicate to her between May and June 2022 that he was having issues with the device or that it malfunctioned when he submitted a test.

¶ 45    The court's judgment provided that, if Robert refused to take a breathalyzer test, he could not see his children, and the evidence at trial, viewed in the light most favorable to the prosecution,

reasonably showed that Robert did not take a test on certain dates in May and June 2022. The trial court could further reasonably infer that Robert acted with contemptuous intent from the foregoing. In addition to the evidence from May and June 2022, there was evidence in the record concerning Robert's history of noncompliance. As the State notes, in March 2022, Currens moved to modify the dissolution judgment, asserting that Robert had not yet submitted to any breath tests to establish he was sober during parenting time. The court, in turn, modified its allocation judgment to require breath tests to occur at 7 a.m. and 7 p.m. and to provide Currens with access to test results. The court assessed the evidence and the parties' arguments, including Robert's arguments concerning the accuracy of the data in exhibit No. 1. Viewing the evidence in the light most favorable to the prosecution, we cannot conclude that no rational trier of fact would have found the elements of indirect criminal contempt beyond a reasonable doubt.

¶ 46    In summary, the evidence was sufficient to sustain Robert's conviction.

¶ 47                                III. CONCLUSION

¶ 48    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 49    Affirmed.